IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROS HENG PIN, ID # 1004975, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:03-CV-2282-M |
| | ) | |
| DOUGLAS DRETKE, Director, | ) | |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

### A. Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his convictions for murder in Cause No. F99-56204-P and aggravated assault in Cause No. F99-56205-P. Respondent is Douglas Dretke, Director of TDCJ-CID.

### B. Procedural and Factual History

On December 26, 1999, petitioner and another individual, Sobia Chin (Chin) were involved in a gang-related shooting spree outside a Dallas club. *See Pin v. State*, Nos. 05-00-01541-CR, 05-01-00063-CR, 2001 WL 1637471, at *1 (Tex. App. – Dallas Dec. 21, 2001, pet. ref'd) (setting forth relevant background facts). One individual died from gunshots wounds while another was severely

injured.  *Id.*  On December 29, 1999, the State indicted petitioner for murder and aggravated assault with a deadly weapon in connection with the shooting.  TR-04[1] at 2 (indictment); TR-05 at 2 (indictment).

At trial, "the State presented evidence that [petitioner] fired the bullets that hit the victims. Specifically, an employee of the nightclub and an off-duty police officer each testified positively and unequivocally that [petitioner] was the person that shot the victims."  *See Pin*, 2001 WL 1637471, at *1.  Petitioner's friend, Sovoeun Song, testified that, after he drove petitioner and Chin to the club, petitioner "began shooting a nine-millimeter handgun at a crowd outside the club."  *Id.*  Law enforcement personnel recovered a nine-millimeter handgun at the scene, which was later determined to have "fired the bullets that killed the deceased."  *Id.*

On September 21, 2000, a jury convicted petitioner of murder and aggravated assault after hearing the evidence presented against him.  (Pet. for Writ of Habeas Corpus (Pet.) ¶¶ 2-6); Reporter's Record, Vol. V at 86 [hereinafter cited as RR-volume # at page].  The jury assessed punishment at life imprisonment for the murder conviction and twenty years imprisonment for the aggravated assault conviction, and the court sentenced him accordingly.  RR-V at 120-23.

On December 21, 2001, the court of appeals affirmed the convictions.  *See Pin*, 2001 WL 1637471, at *3.  The Texas Court of Criminal Appeals refused petitioner's petition for discretionary review (PDR) on February 20, 2002.  (Pet. ¶ 9.)  On October 25, 2002, petitioner filed a state application for writ of habeas corpus for each of his convictions.  *See* S.H. Tr.-01[2] at 4; S.H. Tr.-02

---

[1]  "TR-04" refers to the state trial record in Cause No. F99-56204.  The Court will use "TR-05" to refer to the state trial record in Cause No. F99-56205.

[2]  "S.H. Tr.-01" denotes the state habeas records attached to *Ex parte Pin*, No. 54,563-01, slip op. (Tex. Crim. App. Apr. 23, 2003).  The Court will use "S.H. Tr.-02" to denote the state habeas records attached to *Ex parte Pin*, No. 54,563-02, slip op. (Tex. Crim. App. Apr. 23, 2003).

at 2. The Texas Court of Criminal Appeals denied those applications without written order on April 23, 2003. *Ex parte Pin*, No. 54,563-01, slip op. at 1 (Tex. Crim. App. Apr. 23, 2003); *Ex parte Pin*, No. 54,563-02, slip op. at 1 (Tex. Crim. App. Apr. 23, 2003).

On September 26, 2003, petitioner filed the instant petition for federal habeas relief. (*See* Pet. at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system). Respondent thereafter filed an answer and provided the state-court records. (Resp.'s Answer [hereinafter Answer].) Petitioner subsequently filed an unsigned reply brief. (*See* Traverse [hereinafter Reply].)

## C. Issues

Petitioner claims that the State is holding him unlawfully because (1) the evidence is (a) factually and (b) legally insufficient to support his convictions; (2) trial counsel rendered ineffective assistance when he (a) failed to request specific jury instructions or object to the jury charge, (b) failed to object to trial testimony, (c) failed to investigate his blood alcohol level, (d) failed to request an accomplice-witness instruction, and (e) failed to disclose prior inconsistent statements made by the accomplice witness; and (3) the prosecutor and trial court failed to investigate his case. (*See* Pet. at 7-8; Mem. at 1-38.)

Respondent contends that petitioner has not sufficiently exhausted his state remedies with respect to Claims 1(b) and 2(b) through (e). (Answer at 3-4.) He does not seek dismissal for the failure to exhaust, but rather, on the related ground of procedural bar. (*Id.* at 4-7, 11-12.)

3

## II.  PROCEDURAL BAR

Respondent asserts that petitioner has procedurally defaulted Claims 1(b) and 2(b) through (e) by failing to properly present them to the Texas Court of Criminal Appeals.  (*See* Answer at 4-7, 11-12.)

In general, federal courts may not review a state court decision that rests on an adequate and independent state procedural default unless the habeas petitioner shows "cause" for the default and "prejudice attributable thereto" or demonstrates that the failure to consider the federal claim will result in a "fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989).  When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review. *See id.*; *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995).  Furthermore, when a claim has not been reviewed by the state's highest court, this Court may find such claim procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).  The general rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply when a petitioner has not presented his claims to the highest court of the state and the state court to which he would be required to present his claims would now find the claims procedurally barred. *Id.*

To present a claim to the highest state court means that the petitioner has fairly presented such claim to the correct court in a procedurally proper manner. *See Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982).  One does not "fairly present" the substance of a particular claim by raising a claim based upon a different legal theory. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).  "It is not enough that all the facts necessary to support the . . . claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citation

4

omitted). When a petitioner raises a claim on federal habeas review based upon a legal theory distinct from the theory relied upon in the state court, he has not properly presented the federal claim to the state courts. *See Wilder*, 274 F.3d at 259. Furthermore, a petitioner does not properly present his claims to the Texas Court of Criminal Appeals through the direct appeal process "without first obtaining review by an intermediate appellate court." *Myers v. Collins*, 919 F.2d 1074, 1077 (5th Cir. 1990). The "exhaustion doctrine . . . requires that the chosen avenue of post-conviction relief, whether direct or collateral, be pursued in such a manner so as not to present claims to a state's appellate courts for the first and only time in a petition for discretionary review." *Id.*

To find that Claims 1(b) and 2(b) through (e) are procedurally barred from federal habeas review, the Court must find the following: that petitioner procedurally defaulted such claims; the state court either relied upon such default or would do so if the claim were now presented to it; and petitioner has not overcome the procedural bar by showing cause for and prejudice from such default, or by demonstrating that application of bar will result in a fundamental miscarriage of justice. In this case, the alleged default with respect to petitioner's sufficiency-of-the-evidence claim (Claim 1(b)) differs materially from the alleged default with respect to the alleged ineffective assistance claims found in Claim 2. The Court thus addresses the two claims separately.

## A.  Claim 1(b) – Legal Sufficiency of the Evidence

Respondent urges the Court to find Claim 1(b) procedurally barred because petitioner did not raise it on direct appeal. (Answer at 11.)

A review of the claims petitioner raised in state court reveals that he did not fairly raise Claim 1(b) to the Texas Court of Criminal Appeals in a procedurally proper manner. On direct appeal, he claimed only that the evidence was factually insufficient to support his convictions. *See*

5

Brief for Appellant at 3 (identifying two appellate claims – (1) the evidence was factually insufficient to support his convictions and (2) the trial court erred in requiring him to display a tattoo to the jury), *Pin v. State*, Nos. 05-00-01541-CR, 05-01-00063-CR, 2001 WL 1637471 (Tex. App. – Dallas Dec. 21, 2001, pet. ref'd) [hereinafter Appellate Brief].  Petitioner never specifically challenged the legal sufficiency of the evidence, which is a separate and distinct legal theory from factual insufficiency.[3]  *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).  By raising only a factual-insufficiency claim on direct appeal, petitioner did not present his related legal-insufficiency claim for review.  *See Wilder*, 274 F.3d at 259.  The failure to challenge the legal sufficiency of the evidence on direct appeal thus constitutes "a procedural default under state law" that may bar this Court from reviewing the claim on federal habeas review.  *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994); *Cross v. Johnson*, 169 F. Supp. 2d 603, 614-15 (N.D. Tex. 2001).

Petitioner did not cure the procedural default by presenting his legal sufficiency claim to the Texas Court of Criminal Appeals in his state applications for writ of habeas corpus.[4]  Even if the Court construes petitioner's claims in his state habeas applications that "no evidence" supports his convictions, *see* S.H. Tr.-01 at 9; S.H. Tr.-02 at 7, as raising claims of legal insufficiency of the evidence,[5] such construction does not remedy the procedural default or save petitioner from the

---

[3]  In fact, the federal courts do not recognize factual insufficiency of the evidence as a valid basis for federal habeas relief. *See, e.g.*, *Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *7 (N.D. Tex. Nov. 12, 2004) (findings, conclusions, and recommendation), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005).

[4]  In his state writs, petitioner claimed that (1) "no evidence" supports his convictions; (2) trial court erred when it failed to give jury charge for a lesser included offense; (3) trial court failed to investigate and thus failed to give a jury charge for a lesser included offense; (4) trial court erred when it required him to display a tattoo for the jury; and (5) trial counsel rendered ineffective assistance when he refused to interview state witnesses, failed to request a jury instruction for a lesser included offense, failed to file a motion of joinder and consolidation of prosecutions, and failed to allow petitioner to testify at trial.  *See* S.H. Tr.-01 at 9-11; S.H. Tr.-02 at 7-9.

[5]  A federal claim that "no evidence" supports a petitioner's convictions is the same as a challenge to the legal sufficiency of the evidence.  *See Haley v. Cockrell*, 306 F.3d 257, 266-67 (5th Cir. 2002) (noting that a claim of "no evidence" is the

failure to challenge the legal sufficiency of the evidence on direct appeal.  Under Texas law, it has long been held that challenges to the sufficiency of the evidence of a conviction must be raised on direct appeal.  *See Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994) (holding evidentiary sufficiency claims not cognizable in post-conviction, collateral attack); *West v. Johnson*, 92 F.3d 1385, 1389 n.18 (5th Cir. 1996) (recognizing the long-standing legal principle under Texas law).  Moreover, when the Texas Court of Criminal Appeals denied petitioner's state applications for writ of habeas corpus without written order, it implicitly denied the sufficiency claims on the procedural basis that such claims are not cognizable on state habeas review.  *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004).

In this instance, petitioner has procedurally defaulted his legal-sufficiency-of-the-evidence claim under Texas law.  Such default constitutes an adequate and independent state procedural ground to bar federal habeas review.  When a defendant fails to properly exhaust insufficiency-of-the-evidence claims, the Court may find the claims procedurally barred if the "time to file a petition for discretionary review has expired."  *Haley v. Cockrell*, 306 F.3d 257, 264 (5th Cir. 2002) (citing TEX. R. APP. P. 68.2), *vacated on other grounds*, 541 U.S. 386 (2004).  Petitioner cannot now present the claim in a PDR because the time for doing so has passed.  Further, he cannot present the claim in another state writ because such presentation is not proper under state law.  Consequently, the Court may find the claim procedurally barred.

To overcome the procedural bar, a petitioner must demonstrate "(1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law or (2) that failure to consider his claims will result in a fundamental miscarriage of justice."  *Smith v. Johnson*, 216 F.3d

same as a claim of insufficiency of the evidence), *vacated on other grounds*, 541 U.S. 386 (2004).

521, 524 (5th Cir. 2000) (quoting *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997)).   Throughout his reply brief, petitioner asserts that ineffective assistance of counsel caused his procedural default, he was prejudiced thereby, and that, in any event, a miscarriage of justice would result from the Court's failure to consider his legal-insufficiency-of-the-evidence claim.   (*See generally* Reply.)

Assuming for purposes of these findings that counsel rendered deficient performance when he failed to challenge the legal sufficiency of the evidence on direct appeal, the Court is still unable to find the requisite prejudice to petitioner to overcome the procedural bar.   Counsel challenged the factual sufficiency of the evidence on direct appeal.   The court of appeals found the evidence factually sufficient to support petitioner's convictions.   It is well-established that the standard used to judge that claim is "more stringent" than the standard used for judging the legal sufficiency of the evidence.   *See Woods v. Cockrell*, 307 F.3d 353, 357-58 (5th Cir. 2002).   Because the Court finds no reasonable likelihood that the court of appeals would have reversed petitioner's convictions had counsel challenged the legal sufficiency of the evidence, and petitioner has shown no prejudice from the failure of petitioner's appellate attorney to challenge the legal sufficiency of the evidence.

Petitioner also attempts to overcome the procedural bar by claiming that a miscarriage of justice will occur if the Court does not consider his insufficiency-of-the-evidence claim because he is actually innocent.   The miscarriage of justice exception is "confined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)).   Although petitioner asserts that he is actually innocent, he provides no facts to show that he did not commit the crimes for which he was convicted.   He instead relies upon a claim that no or insufficient evidence supports the convictions.   Such claim, however, does not equate

8

with a claim that he did not commit the crime for which he was convicted. *See Hernandez v. Cockrell*, No. 3:00-CV-2003-M, 2001 WL 1661696, at *4 (N.D. Tex. 2001) (findings and recommendation accepted by the District Court). Petitioner has not overcome the state procedural bar. Accordingly, the procedural default doctrine bars federal habeas relief on his legal-sufficiency-of-the-evidence claim, and the Court will not review this claim except as needed to resolve petitioner's other claims.

## B.  Claim 2(b) through (e) – Ineffective Assistance of Counsel

Respondent urges the Court to find Claim 2(b) through (e) procedurally barred because petitioner did not properly present them to the Texas Court of Criminal Appeals. (Answer at 3-6.)

A review of the claims petitioner raised in state court reveals that he did not fairly raise Claims 2(b) through (e) to the Texas Court of Criminal Appeals in a procedurally proper manner. Petitioner did not raise Claims 2(b), (c), or (e) at any point in the state review processes. *See* Appellate Brief at 3; PDR at 3-13 (identifying claims raised in PDR);[6] S.H. Tr.-01 at 9-11 (identifying state habeas claims raised against murder conviction); S.H. Tr.-02 at 7-9 (identifying state habeas claims raised against aggravated assault conviction). Although petitioner attempted to raise Claim 2(d) in his PDR, *see* PDR at 9, such attempt does not fairly present the claim to the Texas Court of Criminal Appeals in a procedurally proper manner because he did not first present it to the intermediate court of appeals, *see Myers v. Collins*, 919 F.2d 1074, 1077 (5th Cir. 1990). The failure to properly present Claims 2(b) through (e) to the highest court in Texas constitutes a procedural

---

[6]  In addition to the two claims raised on appeal, petitioner raised two claims of ineffective assistance of counsel in his PDR – (1) failure to request a jury instruction concerning testimony from an accomplice, and (2) failure to object to the omission of an instruction on the lesser included offense of involuntary manslaughter. *See* PDR at 3-13 (found in state court records submitted to the Court).

default that could bar this Court from considering such claims on federal habeas review. *See In re Bagwell*, 401 F.3d 312, 315 (5th Cir. 2005); *Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir.), *cert. denied*, 541 U.S. 1087 (2004).

Were this Court to require Petitioner to present Claims 2(b) through (e) to the Texas Court of Criminal Appeals, the claims would be subject to dismissal under the Texas abuse-of-the-writ doctrine, TEX. CODE CRIM. PRO. ANN. art. 11.07, § 4.[7] That doctrine "prohibits a second [state] habeas petition, absent a showing of cause, if the applicant urges grounds therein that could have been, but were not, raised in his first habeas petition." *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (footnote omitted). "[A]rticle 11.07 § 4 is an adequate and independent state procedural ground to bar federal habeas review and . . . has been strictly and regularly applied since 1994." *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000). When such a state procedural ground exists, "federal courts ordinarily will not review questions of federal law." *Id.* Consequently, unless petitioner can overcome the procedural bar, the claims raised in the instant petition will not be further considered.

To overcome the procedural bar established by the abuse-of-the-writ doctrine, a petitioner must demonstrate cause and prejudice or a fundamental miscarriage of justice. *Id.* at 524. For the reasons already stated, petitioner has not shown himself to be actually innocent of the crimes for which he was convicted and therefore cannot show that a fundamental miscarriage of justice will result from a failure to consider his claims. In addition, petitioner has shown no cause for failing to

---

[7]  Texas also has an abuse of writ doctrine specifically applicable to capital cases. *See* Tex. Code Crim. P. Ann. art. 11.071, § 5(a). No material difference exists between the rules or their analysis. *Emery v. Johnson*, 139 F.3d 191, 195 n.3 (5th Cir. 1997). The Court may thus freely cite to either capital or non-capital cases that address the abuse of writ doctrine.

raise the claims to the Texas Court of Criminal Appeals.  Because petitioner failed to present his claims of ineffective assistance of counsel in his *pro se* state writ, he cannot demonstrate cause for the default by asserting that his attorney should have presented the claims.  Petitioner could have presented Claims 2(b) through (e) to the Texas Court of Criminal Appeals through his *pro se* state applications for writ of habeas corpus.  Petitioner presents no reason for his failure to raise them in his state applications.  The Court, furthermore, finds no adequate reason for the failure.

For the foregoing reasons, petitioner has not overcome the state procedural bar.  Accordingly, the procedural default doctrine bars federal habeas relief on Claims 2(b) through (e) raised in the instant petition.

## III. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.  Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

In this case, the denial of petitioner's state writ constitutes an adjudication on the merits except to the extent it raises a legal-insufficiency-of-the-evidence claim. *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004) (holding that, although a denial generally constitutes an adjudication on the merits, a denial without written order indicates a procedural dismissal of claims of insufficiency of the evidence). The court of appeals specifically considered the merits of petitioner's factual insufficiency claim when it affirmed his convictions. *Pin v. State*, Nos. 05-00-01541-CR, 05-01-00063-CR, 2001 WL 1637471, at *1-2 (Tex. App. – Dallas Dec. 21, 2001, pet. ref'd). In view of these adjudications on the merits, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply to petitioner's claims that are not procedurally barred from federal review.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies

12

Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] prece-dent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'un-reasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

With these AEDPA standards in mind, the Court proceeds to address the merits of peti-tioner's remaining claims.

## IV.  FACTUAL SUFFICIENCY OF THE EVIDENCE

In Claim 1(a), petitioner contends that the evidence presented against him at trial is factually insufficient to support his convictions.

Texas state appellate courts are imbued with the authority to conduct factual sufficiency reviews of the evidence. The authority to conduct factual sufficiency reviews derives from the Texas Constitution and statutory authority, and not from any federal constitutional right. *Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex. Crim. App. 1996). Thus, the Texas courts' more exacting factual sufficiency standard does not implicate federal constitutional concerns. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002). Neither the United States Supreme Court nor the Fifth Circuit Court

of Appeals has recognized factual insufficiency as a valid basis for habeas relief.   Accordingly, peti-

tioner's factual sufficiency claim fails because he has shown no deprivation of any federally-secured

right.

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

In Claim 2(a), petitioner alleges that his trial counsel rendered ineffective assistance of

counsel when he failed to request specific jury instructions or object to the jury charge.  (Pet. at 7;

Mem. at 10-14).  He asserts that his attorney should have requested instructions on lesser included

offenses of murder, *i.e.*, manslaughter, aggravated assault, and deadly conduct, and a lesser included

offense of aggravated assault, *i.e.*, deadly conduct, and that his attorney should have objected to the

omission of such instructions.[8]  (Mem. at 10-13, 27.)  He contends that lesser-included-offense

instructions were warranted because there was no evidence of the intent required to convict him of

murder and aggravated assault.  (*Id.* at 11.)  He also asserts that his attorney failed to object to the

jury charge regarding his intoxication because "when temporary insanity is relied upon as a defense,"

the trial court must instruct the jury regarding his intoxication.  (*Id.* at 13.)

The Sixth Amendment to the United States Constitution provides criminal defendants a

right to effective assistance of counsel during trial.  U.S. CONST., art. VI.  To successfully state a

claim of ineffective assistance of counsel under Supreme Court precedent, petitioner must demon-

---

[8] Although it is not entirely clear whether petitioner contends that his attorney should have requested a deadly conduct instruction as a lesser included offense of murder, the Court liberally construes petitioner's filings as making such contention.  On the other hand, while it is also unclear whether petitioner contends that his attorney should have requested a manslaughter instruction as a lesser included offense of aggravated assault, the Court declines to construe petitioner's filings as making such a contention.  Although under Texas law, aggravated assault may constitute a lesser included offense of manslaughter, *see Johnson v. State*, 4 S.W.3d 254, 258 (Tex. Crim. App. 1999), the opposite is not true. Thus, any claim that counsel should have requested an instruction for manslaughter as a lesser included offense of aggravated assault necessarily fails.  Likewise, any claim that counsel should have objected to the omission of such a lesser-included-offense instruction also necessarily fails.  Attorneys have no duty to request unwarranted instructions or to assert meritless or futile objections.

strate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations, furthermore, are insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

**A.  Instruction Regarding Voluntary Intoxication**

Petitioner contends that counsel should have objected to the jury charge as it related to his intoxication.  (Mem. at 13.)  Under Texas law, "[v]oluntary intoxication does not constitute a defense to the commission of a crime." *See* TEX. PENAL CODE ANN. § 8.04(a) (Vernon 2003) (historical and statutory note indicates that the only amendment of statute occurred in 1993 and "made no apparent change");[9] *Hawkins v. State*, 605 S.W.2d 586, 589 (Tex. Crim. App. 1980).  The trial court instructed the jury consistent with § 8.04(a).  *See* TR-04 at 35; TR-05 at 41.  Thus, counsel had no valid basis to object to the jury charge relative to instructions concerning his intoxication at the guilt-innocence stage of trial.  Attorneys do not render deficient performance when they fail to assert a meritless objection.  *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997).

Although § 8.04(b) and (c) recognize that some defendants may rely upon a defense of temporary insanity caused by intoxication and that evidence of such insanity can be introduced in mitigation of the punishment to be imposed, petitioner did not rely upon any temporary insanity defense at trial or at punishment.  *See* RR-V at 74-81 (closing argument at guilt-innocence stage which reflects defensive theory that petitioner did not shoot the firearm); 92-109 (testimony presented at punishment which reflects no defensive theory of temporary insanity); 112-15 (closing

---

[9] Section 8.04 provides:

(a) Voluntary intoxication does not constitute a defense to the commission of crime.

(b) Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried.

(c) When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was caused by intoxication, the court shall charge the jury in accordance with the provisions of this section.

(d) For purposes of this section "intoxication" means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

argument at punishment which reflects no defensive theory of temporary insanity).  Because peti-

tioner was not relying upon a defense of temporary insanity, counsel had no basis to object to the

omission of an instruction regarding intoxication at punishment and was therefore not deficient in

failing to lodge an objection to such omission.  This claim entitles petitioner to no habeas relief.

**B.  Instructions Regarding Lesser Included Offenses**

Petitioner contends that counsel should have requested jury instructions for lesser included

offenses and that his attorney should have objected to the absence of such instructions.  (Mem. at

10-14.)

To establish that counsel's performance was deficient for failure to request instructions on

lesser-included offenses or object to the omission of such instructions, petitioner must first show that

he was entitled to such instructions.  Texas courts apply a two-part test to determine entitlement

to such an instruction.  *See Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993) (en

banc).  "[F]irst, the lesser included offense must be included within the proof necessary to establish

the offense charged, and, second, some evidence must exist in the record *that would permit a jury*

*rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense."  *Id.* at 673;

*accord* TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981) (defining lesser included defense).

*1.  Part One:  Inclusion of lesser offense within proof necessary to establish charged offense*

To determine satisfaction of the first part of the *Rousseau* test, the courts look to the offenses

actually charged in the indictments against the defendant and the statutory elements of the charged

offenses and the alleged lesser included offenses.  *See Jacob v. State*, 892 S.W.2d 905, 907-08 (Tex.

Crim. App. 1995) (en banc).  The courts, furthermore, remain mindful that

[a] given section of the Penal Code may define more than one way in which an offense can be committed. An allegation that an offense has been committed in one way may include a lesser offense, while an allegation that the offense was committed in another way would not include the lesser offense.

*Bell v. State*, 693 S.W.2d 434, 436 (Tex. Crim. App. 1985).

With regard to the murder charge, a person commits murder under Texas law "if he intentionally or knowingly causes the death of an individual" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual."[10] *See* TEX. PENAL CODE ANN. § 19.02(b)(1) and (2) (Vernon 2003). The State specifically charged murder under both bases, alleging that, on or about December 26, 1999, in Dallas County, Texas, petitioner

unlawfully then and there intentionally and knowingly cause the death of [the complainant], an individual, by firearm, a deadly weapon,

and unlawfully then and there intend to cause serious bodily injury to [the complainant] and did then and there commit an act clearly dangerous to human life, to-wit: by shooting said [complainant], and did thereby cause the death of [the complainant], an individual.

*See* TR-04 at 2.

Petitioner claims that his attorney should have requested instructions regarding aggravated assault, manslaughter, and deadly conduct as lesser included offenses of murder. A person commits

---

[10]   "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *See* TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2003). In addition,

[a] person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*Id.* § 6.03(b). The trier of fact "may infer intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime and from the nature of wounds inflicted on the victims." *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999).

manslaughter under Texas law if "he recklessly causes the death of an individual."[11] *See* TEX. PENAL CODE ANN. § 19.04(a) (Vernon 2003). A person commits assault when he "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon 2003). The use or exhibition of a deadly weapon during an assault transforms simple assault into aggravated assault. *See id.* § 22.02(a)(2). In addition, causing serious bodily injury also transforms a simple assault into an aggravated assault. *See id.* § 22.02(a)(1). A person commits misdemeanor deadly conduct when "he recklessly engages in conduct that places another in imminent danger of serious bodily injury." *See id.* § 22.05(a) and (e). A person commits felony deadly conduct when he or she "knowingly discharges a firearm at or in the direction of . . . one or more individuals." *See id.* § 22.05(b) and (e).

Under Texas law, manslaughter and aggravated assault can be a lesser included offenses of murder. *See Cardenas v. State*, 30 S.W.3d 384, 392 (Tex. Crim. App. 2000). In addition, for purposes of these findings, the Court assumes without deciding that deadly conduct can be a lesser included offense of murder under Texas law.[12]

---

[11] Under Texas law,

> [a] person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(c) (Vernon 2003).

[12] The Texas courts disagree whether deadly conduct can be a lesser included offense of murder. *Compare Ortiz v. State*, 144 S.W.3d 225, 232-34 & n.7 (Tex. App. – Houston [14 Dist.] 2004, pet. ref'd) (holding that deadly conduct can be such a lesser included offense) *with Moreno v. State*, 38 S.W.3d 774, 779 (Tex. App. – Houston [14 Dist.] 2001, no pet.) (holding that deadly conduct is not a lesser-included offense of murder); *Ramirez v. State*, 976 S.W.2d 219, 227 (Tex. App. – El Paso 1998, pet. ref'd) (same). This Court need not definitively resolve the issue and assumes, for purposes of these findings only, that deadly conduct is a lesser included offense of murder under Texas law.

With regard to the aggravated assault conviction, the State charged petitioner with aggravated assault with a deadly weapon under both § 22.02(a)(1) and (2), alleging that on or about December 26, 1999, in Dallas County, Texas, petitioner

> unlawfully then and there intentionally and knowingly cause bodily injury to [the complainant] by shooting said complainant, and said defendant did use and exhibit a deadly weapon to-wit:  a firearm, during the commission of the assault,

> and further, said defendant did then and there intentionally and knowingly cause serious bodily injury to [the complainant] by shooting said complainant.

*See* TR-05 at 2.  Petitioner also claims that his attorney should have requested an instruction regarding deadly conduct as a lesser included offense of aggravated assault.  For purposes of these findings, the Court also assumes without deciding that deadly conduct can be a lesser included offense of aggravated assault under Texas law.[13]

### 2. Part Two:  Evidence in the record to support the lesser offense

The second part of the *Rousseau* test requires the existence of some evidence "in the record *that would permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense." *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993) (en banc).  With respect

---

[13] Texas courts have also reached different results when determining whether misdemeanor and felony deadly conduct can be lesser included offenses of aggravated assault.  *See Bell v. State*, 693 S.W.2d 434, 438-39 (Tex. Crim. App. 1985) (holding that misdemeanor deadly conduct is lesser included offense of aggravated assault when the assault charge merely alleged that the defendant used a deadly weapon); *Isaac v. State*, 167 S.W.3d 469 (Tex. App. – Houston [14 Dist.] 2005, pet. filed) (same); *Schreyer v. State*, ___ S.W.3d ___, ___, No. 05-03-01127-CR, 2005 WL 1793193, at *7-8 (Tex. App. – Dallas July 29, 2005, no pet. h.) (holding that misdemeanor deadly conduct is not a lesser included offense of aggravated assault because indictment alleged aggravated assault from using or exhibiting a deadly weapon, but recognizing other situations when deadly conduct is a lesser included offense of aggravated assault); *Chin v. State*, Nos. 05-01-00167-CR, 05-01-00168-CR, 2001 WL 1570787, at *5 (Tex. App. – Dallas 2001, no pet. h.) (addressing issue in context of felony deadly conduct and holding that deadly conduct can be a lesser included offense of aggravated assault in a particularly pertinent factual scenario because it relates to the conviction of Sobia Chin as a party to the offenses for which petitioner was convicted and sentenced).  These differences may result because courts consider whether a particular offense is a lesser included offense on a case-by-case basis.  *See Campbell v. State*, 149 S.W.3d 149, 152 (Tex. Crim. App. 2004) (en banc).  As with murder, this Court also assumes for purposes of these findings only, that deadly conduct is a lesser included offense of aggravated assault under Texas law.

to this prong, "[t]he evidence must establish the lesser-included offense as a valid rational alternative to the charged offense." *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000).

Petitioner contends that trial testimony showed that he was drunk and high on cocaine at the time of the offenses for which he has been convicted. (Mem. at 10.)  He further contends that trial testimony showed that he "had no reason to shoot at anyone" and that he was randomly shooting without aiming. (*Id.* at 10-11, 13.)  He argues that such testimony shows that, if he was guilty, he was guilty only of aggravated assault, manslaughter, or deadly conduct instead of murder and deadly conduct instead of aggravated assault. (*See id.* at 10-14.)  He contends that the evidence merely shows that he acted recklessly rather than intentionally. (*See id.*)

The identified testimony does not permit a rational jury to find that if petitioner is guilty, he is guilty only of the lesser offenses.  Even if true, such testimony does not make his actions unintentional or unknowing.  Neither murder nor aggravated assault require a motive or aimed shooting to secure a conviction.  Voluntary intoxication, furthermore, is no defense to an offense.  Petitioner points to no testimony or other evidence to find that he was merely acting recklessly, rather than intentionally and knowingly.

Further, the nature of the murder and aggravated assault, along with eyewitness testimony, supports a finding that petitioner acted intentionally and knowingly.  State witnesses testified that petitioner was firing his weapon into a crowd outside a club, killing one person and injuring another. *See* RR-III at 51-58, 71-86; RR-IV at 67-74.  A medical examiner testified that the murder victim was shot four times from behind.  RR-V at 15-28.  The evidence presented is legally sufficient to sustain petitioner's convictions for murder and aggravated assault.[14]  From the evidence presented

---

[14] Although petitioner has procedurally defaulted this claim, the Court has considered it in the context of this claim of

at trial, a jury could not rationally find that petitioner was only guilty of the reckless crimes of manslaughter or misdemeanor deadly conduct rather than the intentional crimes of murder or aggravated assault. Furthermore, from the evidence presented at trial, a jury could not rationally find that petitioner was only guilty of the intentional crimes of felony deadly conduct or aggravated assault instead of murder. It is undisputed that an individual died as a result of petitioner's conduct; because murder requires the death of an individual, no rational jury could find that if petitioner is guilty, he is guilty only of felony deadly conduct or aggravated assault. "A murder defendant is not entitled to an instruction on the lesser included offense of aggravated assault when the evidence showed him, at the least, to be guilty of a homicide." *Jackson v. State*, 992 S.W.2d 469, 475 (Tex. Crim. App. 1999).

For similar reasons, from the evidence presented at trial, a jury could not rationally find that petitioner was only guilty of felony deadly conduct instead of aggravated assault. No one disputes that the victim of the aggravated assault suffered serious bodily injury. Under such facts, an instruction for felony deadly conduct was not warranted.

---

ineffective assistance of counsel. To determine whether legally sufficient evidence supports a conviction, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Federal courts apply the "standard looking to the state's substantive law, giving great weight to the state court's determination." *Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir. 2000). State case law and statutes bind the courts in their determination of the elements needed to be proven. *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992). In reviewing a challenge to the sufficiency of the evidence supporting the underlying conviction, "*Jackson* requires . . . that the review occur 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Bledsue v. Johnson*, 188 F.3d 250, 259 (5th Cir. 1999) (quoting *Jackson*, 443 U.S. 324 n.16). The federal courts must "independently analyze the governing statute, the indictment, and the jury charge to measure the constitutional sufficiency of the evidence and determine what are the *essential elements* required by the *Jackson* sufficiency inquiry." *Id.* at 260. Such independent analysis is required so as to avoid reliance upon an incorrect jury charge or indictment. *Id.* After examining the governing statutes, the indictments, and the jury charge in this case, the Court finds legally sufficient evidence to support petitioner's convictions for murder and aggravated assault.

Because jury instructions for alleged lesser included offenses of deadly conduct, manslaughter, and aggravated assault were not warranted under Texas law, counsel thus had no basis to request such instructions or to object to their absence from the jury charge. The failure to request such instructions or object to their absence does not constitute deficient representation. Accordingly, this claim of ineffective assistance of counsel fails. When the evidence does not support the giving of lesser-included-offense instructions, counsel does not render deficient representation by failing to request such instructions or object to their omission.

Furthermore, petitioner has shown no prejudice from the failures of counsel related to the omitted lesser-included-offense instructions. He has not shown a reasonable probability that the outcome of his trial would have differed had counsel requested the instructions or lodged an objection to the jury charge. He has shown no reasonable probability that the trial court would have included any instruction on the alleged lesser included offenses. In addition, had the trial court accommodated petitioner and included such instructions, the Court still finds no reasonable probability that the jury verdict would have differed in light of the evidence presented at trial.

Further, by denying petitioner's state writ, the Texas Court of Criminal Appeals adjudicated this claim on the merits. The decision of the state court does not appear inconsistent with applicable Supreme Court precedent. The decision does not appear to have involved any unreasonable application of Supreme Court precedent. The adjudication of the claim did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on this claim.

For all of these reasons, petitioner's claim of ineffective assistance of counsel entitles him to no habeas relief.

## VI.  "FAILURE TO INVESTIGATE" CLAIM

In his last claim, petitioner alleges that the prosecutor failed to investigate his case, (Pet. at 7; Mem. at 2), and that the trial court erred when the prosecutor failed to properly investigate his case, (Mem. at 14).  In his state writs, on the other hand, petitioner claimed that the trial court denied him a fair trial when it failed to properly investigate his case and failed to give jury instructions on lesser included offenses.  S.H. Tr.-01 at 26; S.H. Tr.-02 at 26.  Within that claim, he asserted that "had the state properly investigated the charged offenses, by conducting a [sic] alcohol and drug test on [him]" he would have presented evidence that his mental capacity was impaired by alcohol and drugs.  S.H. Tr.-01 at 31-32; S.H. Tr.-02 at 31-32.  Thus, the precise contours of petitioner's failure to investigation claim are not entirely clear.  Because petitioner pursued his claim at the state level in the context of denial of instructions on lesser included offenses, *see* S.H. Tr.-01 at 26-33; S.H. Tr.-02 at 26-33, the Court considers the failure to investigate claim in that context.  The Court notes that to the extent petitioner tries to raise his failure-to-investigate claims in a different context, such claims would be procedurally barred for his failure to raise them in the state courts.  However, because the respondent also liberally construes petitioner's failure to investigate claim as a prosecutorial misconduct claim and does not assert procedural bar, the Court will also consider his failure to investigate claim in this respect.

## A.  Prosecutorial Misconduct

Petitioner appears to allege that the prosecutor engaged in misconduct by failing to adequately investigate his level of intoxication from drugs and alcohol.

The failure to investigate petitioner's level of intoxication cannot constitute prosecutorial misconduct unless the prosecutor owed petitioner a duty to investigate. Although a prosecutor has a duty to fairly investigate a case, such duty does not extend "to conduct a defendant's investigation or assist in the presentation of the defense's case." *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990). The duty to investigate does not extend to discovering information equally available and accessible to the defense. *See East v. Scott*, 55 F.3d 996, 1003-04 (5th Cir. 1995). Thus, the prosecutor in this case engaged in no misconduct when he or she failed to investigate petitioner's intoxication from alcohol and drugs.

In addition, even if the prosecutor owed petitioner a duty to investigate, the breach of that duty does not entitle petitioner to habeas relief unless such breach is of such magnitude to violate due process. *See Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992) (holding that "[p]rosecutorial misconduct implicates due process concerns"). Actions and statements of a prosecutor may violate due process in two ways. "They may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a 'generic substantive due process' violation." *Id.* (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988)). The Court should "first determine the type or types of misconduct alleged, because '[t]he case law supplies a different test for each kind of due process violation.'" *Id.* (quoting *Rogers*, 848 F.2d at 608). In this case, petitioner alleges a general violation of due process.

When considering a general violation of due process, the courts ask whether the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate standard of review for such alle-

gations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *DeChristoforo*, 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy*, 959 F.2d at 1317 (internal quotation marks omitted).[15]

In this instance, petitioner has shown no violation of due process by the investigation pursued by the prosecutor. Although he contends that the alleged improper investigation led to the omission of jury instructions on alleged lesser included offenses, the Court has already determined that petitioner was not entitled to such instructions. Petitioner presents nothing to show a reasonable probability that the verdict might have been different with further investigation by the prosecutor. He has not shown that the failure to investigate rendered his trial fundamentally unfair.

For all of these reasons, petitioner's prosecutorial misconduct claim entitles him to no habeas relief.

## B. Trial Court Error

Petitioner also claims that the trial court erred when it failed to investigate the case and failed to give jury instructions on lesser included offenses. The apparent premise of this claim is that the trial court owed petitioner a duty to investigate his level of intoxication at the time of the alleged offenses. Such faulty premise, however, is insufficient to obtain habeas relief. The trial court owed

---

[15] This is the only test necessary to apply for generic violations of due process. If the alleged misconduct rises to the level of constitutional error, the Court need not apply a harmless error test. *Darden*, 477 U.S. at 183 n.15. The Fifth Circuit Court of Appeals has observed, furthermore, that application of a harmless error test would be "superfluous" after a determination that the trial was rendered fundamentally unfair. *Kirkpatrick v. Blackburn*, 777 F.2d 272, 280 (5th Cir. 1985).

petitioner no duty to investigate his level of intoxication. *See Schrodt v. Pleasant Valley State Prison Warden*, No. C 04-5086 SI (PR), 2005 WL 1514068, at *2 n.3 (N.D. Cal. June 22, 2005) (holding that "a trial court has no duty to investigate and present a defense for a criminal defendant"). Investigating the case with respect to petitioner's level of intoxication is simply not a function of the trial court. Consequently, the trial court did not err by failing to conduct such investigation.

Furthermore, to the extent the more appropriate focus of the claimed trial court error rests with the failure to charge the jury with lesser included offenses of murder and aggravated assault, the claim fares no better. "Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief." *Tarpley v. Estelle*, 703 F.2d 157, 159 (5th Cir. 1983) (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)). "A state prisoner seeking federal habeas relief for erroneous jury instructions faces a heavy burden." *Reddix v. Thigpen*, 805 F.2d 506, 512 (5th Cir. 1986). "Before a federal court may overturn a conviction resulting from a state trial" on a challenge to the instructions given to the jury, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp*, 414 U.S. at 146; *Reddix*, 805 F.2d at 512. That an instruction is "allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). "In examining habeas claims of improper jury instructions, the 'inquiry is not whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude.'" *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (quoting *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986)). On habeas review, federal courts must only determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *McGuire*, 502 U.S. at 72 (quoting

27

*Cupp*, 414 U.S. at 147). Thus, the "harmless-error analysis [applies] to cases involving improper instructions." *See Neder v. United States*, 527 U.S. 1, 9 (1999).

The Fifth Circuit has repeatedly held that there is no federal constitutional right to an instruction on a lesser included offense in a noncapital state trial. *See, e.g., Creel v. Johnson*, 162 F.3d 385, 390 (5th Cir. 1998); *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988). Furthermore, as already noted, a defendant in Texas is entitled to a charge on a lesser included offense if evidence exists "in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense." *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993) (en banc) (emphasis deleted). As previously found, a rational jury could not find that, if petitioner was guilty, he was guilty only of a lesser included offense. Consequently, the trial court made no error in failing to instruct the jury on any lesser included offense of murder or aggravated assault. This claim provides no basis for federal habeas relief.

## VII.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VIII.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED this 4th day of October, 2005.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE